UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH COLVIN, JR. #192744 and
GEORGE BETTS #145197,

       Plaintiffs,

v.                                                  Case No.  2:16-cv-202
                                                  HON. GORDON J. QUIST

DUNCAN MACLAREN, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoners Kenneth Colvin, Jr. and George Betts pursuant to 42 U.S.C. § 1983 against Defendants Duncan MacLaren and Cecil Daley. Plaintiffs assert retaliation claims stemming from their prison transfers and the destruction of their property. Plaintiffs also assert Eighth Amendment claims stemming from the use of handcuffs. Defendant MacLaren filed a motion to dismiss and/or for summary judgment. (ECF No. 19). Defendant Daley filed a separate motion to dismiss and/or for summary judgment. (ECF No. 44). For the reasons stated below, the undersigned recommends that Defendants' motion be granted as to the Eighth Amendment claims and denied as to the retaliation claims.

In their complaint, Plaintiffs allege that they were chosen to be Prisoner Housing Unit Representatives at Kinross Correctional Facility (KCF) in March of 2016. As Prisoner Housing Unit Representatives, Plaintiffs attended "Warden Forum Meetings." In one such meeting, Plaintiffs raised "several non-frivolous issues" on behalf of all the prisoners. Following this meeting, Plaintiffs helped organize a "peaceful protest" at KCF that complied with MDOC policy. In addition, Plaintiff Colvin was a member of the Food Service Committee at KCF. He

alleges that he filed several grievances against KCF staff because he had a conflict performing some of his duties on the Food Service Committee.

On April 7, 2016, Plaintiffs were transferred out of KCF.  They allege that several prison guards came to their cell at 4:30 a.m., woke them up, placed them in handcuffs, and escorted them to the control room.  Plaintiff Betts was sent to Oaks Correctional Facility (ECF).  Plaintiff Colvin was initially sent to Saginaw Correctional Facility (SRF), but because SRF did not offer a religious meal, he was subsequently sent to ECF.  Plaintiffs allege that ECF is considered a disciplinary facility.  Plaintiffs did not receive their property for over five days.  When Plaintiffs finally received their property, their typewriters were damaged and had to be replaced. In addition, Plaintiff Colvin's electric shaver and eyeglasses were missing. Plaintiffs allege that Defendant MacLaren ordered the transfer and that Defendant Dailey completed a Security Classification Review two-days prior.

Based on these events, Plaintiffs assert retaliation claims stemming from the transfer and destruction of property and Eighth Amendment claims stemming from the use of handcuffs.

Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), which authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Fed. R. Civ. P. 8(a)(2), a complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), and Fed. R. Civ. P. 8(a)(2)). While this notice pleading standard does not require "detailed" factual allegations, it does require more than labels and the bare assertion of legal conclusions. *See Twombly*, 550 U.S. at 555.

Generally, when considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in plaintiff's favor. S*ee Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.' " *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570); *see Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012).

Pro se pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even the lenient treatment generally given pro se pleadings has its limits, however. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). "A plaintiff must 'plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678). "A plaintiff falls short if [] he pleads facts 'merely consistent with the defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct[.]'" *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79).

Defendants argue that they are entitled to dismissal on the grounds of qualified immunity. "A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S.Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S.

Ct. 2042, 2044 (2015); *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that each defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier*, 533 U.S. at 201); *see White v. Pauly*, 137 S.Ct. 548, 552 (2017). Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (citations and quotations omitted).

Plaintiffs first allege retaliation claims. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

4

Defendants do not contest the first or third elements of a retaliation claim. Instead, they argues that the transfers did not amount to an adverse act. The determination of whether a defendant's action is adverse is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether a defendant's conduct is "capable of deterring a person of ordinary firmness" from exercising his rights; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005); *see also Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). However, the transfer may rise to the level of an adverse action if it would result in "foreseeable, negative consequences to the particular prisoner." *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (citing *Siggers-El*, 412 F.3d at 701-02; *Pasley v. Conerly*, 345 F. App'x. 981, 985 (6th Cir. 2009)).

Defendants argue that there were no foreseeable consequences of the transfers. However, Plaintiffs assert the following foreseeable consequences of the transfers: (1) they were transferred without their personal and legal property and did not receive their property for over five days; (2) some of their property was damaged and/or lost during the transfer; and (3) they were transferred to a "disciplinary" facility. In addition, Plaintiff Colvin alleges that he was initially transferred to a prison that did not offer his religious diet, which occurred after Plaintiff Colvin filed grievances regarding the food service. At this stage in the proceedings, it is unclear

5

whether Defendants could reasonably foresee these alleged consequences of the transfers. In the opinion of the undersigned, Plaintiffs allegations are sufficient to state retaliation claims.

Plaintiffs also allege Eighth Amendment claims stemming from the use of handcuffs. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement, which although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

In *Barker v. Goodrich*, 649 F.3d 428 (6th Cir. 2011), the Sixth Circuit analyzed similar claims involving the use of restraints. In that case, the plaintiff alleged that prison officials left him handcuffed in his cell for twelve hours. *Id*. at 434. While handcuffed, the plaintiff missed one meal, could not use the restroom, and could not drink water. *Id.* The plaintiff asserted that he had been subjected to excessive force and inhumane conditions of confinement in violation of the Eighth Amendment, and the court analyzed his claim under both standards. *Id.* Whether a prison official's conduct constitutes excessive force in violation of the Eighth Amendment depends on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). A conditions of confinement claim, in contrast, requires a finding of deliberate indifference, that is, "that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842.

The *Barker* court found that both standards were met because the plaintiff "could not maintain a comfortable position for an extended period of time," and he was denied access to water and a restroom, which "subject[ed] him to a significant risk of wrist and arm problems, dehydration and . . . pain and damage to his bladder." *Barker*, 649 F.3d at 434. The Sixth Circuit cited other cases in which the use of restraints resulted in the denial of the minimal civilized measure of life's necessities. *See Hope v. Pelzer*, 536 U.S. 730, 742 (2002) (restraining prisoner in uncomfortable position and denying him access to water for a seven-hour period violated Eighth Amendment); *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 512 (6th Cir. 2001) (limiting access to water for three days violated the Eighth Amendment); *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000) (limiting access to food and water for four days and toilet overnight violated Eighth Amendment); *Gates v. Collier*, 501 F.2d 1291 (5th Cir.1974) (restraining prisoners in uncomfortable position for extended period violated Eighth Amendment).

In this case, Plaintiffs allege that they were handcuffed while being escorted from their cell to the control room the morning of the transfer out of KCF. Thus, in contrast to the above cases, Plaintiffs were not restrained for an extended period of time. In fact, Plaintiffs contend that they were "immediately" taken to the control room. Furthermore, Plaintiffs do not allege that they were denied food, water, or any other necessities of life. Nor do they allege that they suffered any discomfort or pain because of the use of the restraints. Accordingly, in the opinion of the undersigned, Plaintiffs have failed to state an Eighth Amendment claim based on the use of handcuffs. Therefore, Defendant MacLaren is entitled to qualified immunity.

Defendants also move for summary judgment on the grounds of exhaustion. Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED.

R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for

the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through

9

machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

Although Defendants concede that Plaintiff Colvin exhausted his administrative remedies, they claim that Plaintiff Betts failed to exhaust the claims related to the destruction of

---

[1] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

11

property.[2]  Betts filed one grievance related to the facts in this case—KCF 16-04-00629-24z. (ECF No. 20-3).  At Step I, Plaintiff Betts stated that the "emergency transfer without [his] property" violated his rights. He also stated that the transfer was in retaliation for his complaints as a "Warden Forum rep" at KCF.  This grievance was appealed through Step III.  In the opinion of the undersigned, Defendants have failed to establish that Plaintiffs did not exhaust his available administrative remedies.

Accordingly, it is recommended that Defendants' motions to dismiss and/or for summary judgment (ECF Nos. 19 & 44) be granted as to the Eighth Amendment claims and denied as to the retaliation claims.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  May 31, 2018

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

---

[2] Defendants also argued that Plaintiff failed to exhaust his Eighth Amendment claim. Because the undersigned recommends that the Eighth Amendment claim be dismissed for failure to state a claim, the undersigned does not address this argument.